IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION No. 07-51 |
| --- | --- | --- |
| v. | : | CIVIL ACTION No. 12-3766 |
| JOHN J. KELLER | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                           **December 6, 2013**

Defendant John J. Keller moves this Court to vacate his conviction and sentence under 28 U.S.C. § 2255 on the grounds he received ineffective assistance of counsel in violation of his Sixth Amendment rights. He also requests an evidentiary hearing on his claims. Keller raises many issues in support of his ineffective assistance claim, attacking his counsel's performance at trial, sentencing, and on appeal. Despite the breadth of his ineffective assistance allegations, not one finds legal or factual support in the record. Keller's § 2255 motion will therefore be denied without an evidentiary hearing. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (explaining no hearing is required if the record clearly resolves the merits of the § 2255 motion).

**FACTS**

Prior to his conviction in this case, Keller was an attorney in private practice in Allentown, Pennsylvania. In 2001, he agreed to represent Tanya Slavinsky in connection with various matters, including the sale of a house in Connecticut that she had inherited from her mother. The sale of the house generated proceeds sufficient to pay Keller's outstanding bill through February 15, 2002—$27,000. Keller agreed to keep the remaining proceeds—$300,000—in a trust account on Slavinsky's behalf. Shortly thereafter, Keller disbursed $75,000 at Slavinsky's request.

By October 23, 2003, the remaining funds in the account—$225,000—had been exhausted by dozens of checks made payable to Keller, employees of his law firm, his law firm, or others. Keller was indicted on 17 counts of wire fraud, with each check payable to him or his law firm constituting a separate count. On February 11, 2008, the jury found him guilty on 12 of the 17 counts. The district court subsequently sentenced Keller to 57 months on each count to be served concurrently, a three-year term of supervised release, and restitution in the amount of $225,000. On September 27, 2010, the Third Circuit affirmed his conviction and sentence. Keller filed the instant § 2255 motion on June 27, 2012.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody or on supervised release may seek to have his sentence vacated, set aside, or corrected if it was imposed in violation of the Constitution or laws of the United States, or is otherwise subject to collateral attack. The Sixth Amendment right to counsel includes the right to effective assistance of counsel. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 686 (1984). To warrant reversal of a conviction, a convicted defendant must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Id.* at 687.

To satisfy the first prong, deficiency, a petitioner must show his counsel's conduct fell below an objective standard of reasonableness. *Id.* at 688. When evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable, and a court cannot use the benefit of hindsight to second-guess tactical decisions. *Id.* at 690; *see also Diggs v. Owens,* 833 F.2d 439, 444–45 (3d Cir.1987) ("An attorney is presumed to possess skill and knowledge in sufficient

degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential."). Indeed it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This standard requires the petitioner to show more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, those errors must be of sufficient magnitude "to undermine confidence in the outcome" of the trial. *Id.* at 694. In ruling on a § 2255 motion, a court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir.2006).

At various points throughout his memorandum in support of his § 2255 petition, Keller argues that because his counsel was laboring under a conflict of interest, prejudice should be presumed. As the Third Circuit has noted, however, "[t]he circumstances in which prejudice has been found so likely as to be presumed are very rare." *Vance v. Lehman*, 64 F.3d 119, 122 (3d Cir. 1995). Under *Strickland*, prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980)).

Keller's conflict of interest theory is based on an alleged agreement between defense counsel and the prosecution to cooperate regarding certain evidentiary issues in advance of trial

3

so as to avoid burdening the judge. In a footnote, Keller speculates that his attorney wanted to "go easy" on the judge, who was presiding over his first criminal trial, because Keller's counsel had another unrelated civil case pending before the same judge. Keller Mem. 25 n.8, ECF 138 at 37. The mere fact that an attorney has more than one (entirely unrelated) case pending before the same judge does not create a conflict of interest. *Cf. United States v. Kole*, 164 F.3d 164, 176 (3d Cir. 1998) (noting a conflict exists "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other"). There is no tension between exonerating Keller and providing effective representation to another client in an unrelated civil matter, even if it were factually true (which, as explained below, it was not) that counsel for the prosecution and defense agreed to assist the judge and avoid evidentiary issues. Because no conflict existed as a matter of law, the Court will not presume prejudice exists when evaluating Keller's ineffective assistance grounds.

Keller recites a litany of purported attorney errors in an effort to establish an ineffective assistance of counsel claim. Each instance will be addressed individually below, but the collective errors generally fall within the following categories: (1) the failure to challenge the admissibility of recorded conversations between Keller and his former client, Slavinsky, (2) the failure to use whatever means necessary to challenge Slavinsky's testimony or otherwise attack her credibility, (3) the failure to inform the Court regarding potential juror misconduct, (4) the failure to object to the admission of certain evidence on hearsay grounds, (5) the failure to file a motion to dismiss the indictment, and (6) the failure to make certain arguments during sentencing and on appeal.[1]

---

[1] Keller also raises, in his "summary of the issues," a miscellaneous ground for ineffective assistance of counsel that is never further developed in his memorandum. He asserts counsel was ineffective in failing to object to the court's inadequate responses to the jury's questions

4

Keller and Slavinsky's recorded conversations were admitted at trial pursuant to the district court's January 24, 2008, order granting the Government's unopposed motion to admit the recordings. In the order, the court made certain findings as to the admissibility of the recordings under *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975). As explained above, no active conflict of interest motivated the decision not to oppose the motion to admit the recordings; therefore, this Court must determine whether the decision was deficient and whether it prejudiced Keller. Keller contends the recordings should have been challenged on three bases: First, the recorded conversations were entered into evidence without the requisite foundation establishing authenticity. Second, the recorded conversations were unfairly prejudicial because they were obtained by deceiving and coercing Keller while he was under duress. Third, the transcripts of the recordings contained errors and other deceptive differences from the audio, and counsel failed to retain an expert to examine the tapes and to prepare an alternate transcript.

Federal Rule of Evidence 901(a) provides the standard for authenticating an item of evidence, and it requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Prior to the adoption of Rule 901(a), the Third Circuit held when the Government seeks to admit tape recordings, it has the burden "to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." *Starks*, 515 F.2d at 121. There is some question as to whether *Starks* remains good law following the adoption of Federal Rule of Evidence 901, but the Third Circuit has not overruled the case. *See United States v. Toler*, 444 F. App'x 561, 564 n.1 (3d Cir. 2011) (finding

---

during deliberations. Aside from this single assertion, devoid of any detail, Keller dropped the issue. This Court can therefore summarily dismiss his conclusory allegation as unfounded. *See United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000) (reiterating that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court" (citing *United States v. Dawson,* 857 F.2d 923, 928 (3d Cir.1988))).

5

it unnecessary to address the Government's argument that *Starks* was abrogated by Federal Rule of Evidence 901(a) where the Government met the higher *Starks* burden). And courts in this district have continued to evaluate admissibility of tape recordings under the *Starks* test. *See, e.g.*, *United States v. Savage*, No. 07-550, 2013 WL 420334, at *2 n.5 (E.D. Pa. Feb. 4, 2013).

Although Keller claims it was error for his counsel to agree the tapes could be admitted without first establishing an evidentiary foundation, he does not articulate how these tapes would be otherwise inadmissible under Rule 901(a) or *Starks*. Keller cannot question that the recording is what the Government claims it to be because Slavinsky authenticated the recordings through her testimony at trial. She stated they were accurate and she made them of her own free will, without threats or coercion, and she identified the voices as hers, Keller's, and one of Keller's employees. App. 182-82, 188-97.[2] Without providing any substantive challenge to the recordings' admissibility, Keller cannot fault his attorney failing to oppose their admissibility. *See United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) (failing to raise non-meritorious claims does not constitute ineffective assistance of counsel). Because the tapes were clearly admissible, Keller's contention that the parties colluded to avoid difficult evidentiary issues and curry favor with the judge is frivolous.

Keller next argues the recordings should have been excluded because they were unfairly prejudicial. A court can exclude relevant and otherwise admissible evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. of Evid. 403. According to Keller, that the recordings were obtained by deceit and improper coercion while he was under duress establishes they were

---

[2] For ease of reference, and consistent with the Government's citations to the record in its response to Keller's petition, citations to the trial transcripts in this case are to the transcripts included in the appendix submitted to the Third Circuit in connection with Keller's direct appeal, cited herein as "App. __."

6

unfairly prejudicial and weighs in favor of their exclusion under Rule 403. Keller's belief that the tapes were obtained by deceit is irrelevant because undercover recordings do not require two-party-consent. *See United States v. Seibert*, 779 F. Supp. 366, 369 (E.D. Pa. 1991) (citing *United States v. Armocida*, 515 F.2d 49, 52 (3d Cir. 1975)). Keller's assertion of coercion fails for the same reason, since the use of a government agent in an undercover capacity is not itself coercive. *See Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990).[3]

The duress Keller was supposedly under during the conversations also provides no basis to exclude the recordings under Rule 403. While he may have been under pressure to reach agreement with his client due to the then-pending investigation into his actions by the Pennsylvania Disciplinary Board, his statements to Slavinsky were freely given. In short, nothing in the record establishes the kind of duress that would cause this Court to question the veracity of Keller's statements or diminish their probative value.[4] Keller also argued during trial

---

[3] Keller also appears to challenge the *authenticity* of the recordings on the same basis, arguing it was prejudicial error for counsel to agree to the Court's finding, pursuant to *Starks*, that the recorded conversations "were voluntary and lacking inducement." Whether the recorded conversations were voluntary and lacking inducement is indeed a *Starks* factor for admissibility, but as explained above, whether a recording was voluntarily made depends only on the consent of one party—in this case Slavinsky. *See United States v. Antoon*, 933 F.2d 200 (3d Cir. 1991) (analyzing under *Starks* whether the *informant's* decision to record his conversation with defendant was voluntary). Slavinsky testified she agreed voluntarily to record the conversations, App. 182, and Keller's arguments regarding whether he was wrongfully induced to make the statements he made are irrelevant and misplaced.

The absence of coercion also illustrates the hollowness of another of Keller's ineffective assistance claims—his counsel's failure to appeal the district court's imposition of a sentencing enhancement for obstruction of justice. The basis for Keller's sought-after appeal is that his statements trying to dissuade Slavinsky from reporting him to the authorities cannot constitute obstruction of justice because he was coerced by the Government into making those statements. For the reasons set forth above, counsel was correct not to raise this frivolous argument on appeal.

[4] While perhaps not directly applicable to this inquiry, relying on duress as an affirmative defense in a criminal case would normally require a defendant to show he was influenced by an immediate threat of death or serious bodily injury; had a well-grounded fear that the threat would

that his statements could only be understood in context, and he was permitted to testify about the pressure he was under when he made the statements. His own in court testimony thus provided the necessary context and allowed the jury to determine whether the recorded statements tending to establish his guilt should be credited. In these circumstances, there is no basis to conclude as a matter of law that the highly probative recorded statements should have been excluded under Rule 403. Keller's counsel was therefore not deficient for choosing not to object.

Finally, Keller takes issue with the accuracy of the transcripts generated from the audio recordings. There are many instances in the record where Keller admits to the accuracy of the transcripts (*see, e.g.*, App. 891, 923-24, 927, 945-46), and in his memorandum, Keller does not clearly identify which portions of the transcripts he believed were inaccurate or misleading. In any event, the Court need not evaluate or address Keller's assertions that the transcripts were inaccurate because, as a matter of law, the recordings, not the transcripts, constitute the admissible evidence. The jury was instructed to that effect and told that if they noticed any differences between the recordings and transcripts, they were to rely on the recordings and ignore the transcripts. App. 185. Accordingly, even if it could be considered deficient for Keller's counsel not to have objected to the transcripts or retained an expert to assist in preparing alternative transcripts, Keller was not prejudiced. *See United States v. Alston*, No. 09-640, 2010 WL 3360391, at *3 (E.D. Pa. Aug. 24, 2010) ("[T]he Third Circuit's Model Jury Instructions . . . specifically provides . . . jury instructions to eliminate, if not minimize, any possible prejudice . . . ."); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

---

be carried out; and had no reasonable opportunity to escape the threatened harm. *See United States v. Miller*, 59 F.3d 417, 422 (3d Cir. 1995). In the Rule 403 balancing context, the fact that Keller comes nowhere close to meeting this legal standard should also weigh in favor of admissibility.

Turning to Keller's next category of purported attorney error, the Court must consider whether Keller's counsel was ineffective for failing to adequately impeach or otherwise discredit Slavinsky's testimony at trial. Keller asserts two grounds for ineffective assistance in this regard: First, counsel purportedly failed to interview and present critical witnesses to rebut Slavinsky's testimony and to support the testimony of Keller's former employee, Nancy Smith. Second, counsel purportedly failed to impeach Slavinsky adequately on cross examination and did not sufficiently reveal Keller's former client's alleged "paranoid fixations."

With respect to the failure to interview certain witnesses to support his defense, Keller cannot show his counsel's actions were not strategic, or that their testimony would have changed the outcome of the case. When considering this claim, the Court applies "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91. Indeed, "trial counsel was not bound by an inflexible constitutional command to interview every possible witness." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990). Keller maintains that had they been interviewed and subsequently called as witnesses, Evallan Caras and Jamie Farkas could have provided testimony contradicting Slavinsky's statements at trial that she did not give authority for the withdrawals of funds from her trust account.[5] To support this contention, Keller relies on Caras's affidavit in which she claims Slavinsky once told her that "[Slavinksy] really did not want the money." Caras Aff. at 2. Testimony to this effect does not have the import Keller ascribes to it. Contrary to Keller's suggestion, this statement does not contradict Slavinsky's

---

[5] Keller also asserts another of his former employees, Mai Lynn Pham, should have been called to testify. Pham was never interviewed, and as Keller acknowledges, whether her testimony is supportive remains unknown. Without offering the Court any information regarding the nature of Pham's intended testimony, Keller cannot establish that the failure to elicit this testimony was either in error or prejudicial to the defense. His claim in this regard is therefore facially deficient. *United States v. Gray,* 878 F.2d 702, 712 (3d Cir.1989) (petitioner claiming ineffective assistance of counsel for failure to investigate potential witnesses must make a showing of how the testimony of a witness would have been both material and favorable).

9

position that she never gave authority for the withdrawals. Whether or not Slavinsky wanted the money in the escrow account is a different question from whether she authorized Keller to take her money in exchange for services rendered. As for Farkas, nothing in her affidavit supports Keller's view that Slavinsky authorized the withdrawals. Keller's assertion that Farkas can contradict Slavinsky's testimony in this regard is without factual support.

Keller also maintains these two witnesses' testimony would have bolstered the theory that Slavinsky was extremely demanding, requiring Keller to provide services for her commensurate with the funds he stole from her account. Another witness for the defense, Nancy Smith, provided similar testimony during the trial (as did Keller himself), but Keller contends Caras and Farkas would have corroborated Smith's testimony and strengthened the defense's theory of the case. That Keller provided legal services to Slavinsky was never a contested issue during the trial, and Slavinsky admitted she would have paid for his services had Keller ever submitted a bill. The failure to elicit cumulative testimony cannot be said to constitute ineffective assistance. *See United States v. Griffin*, No. 91-612, 1993 WL 34927, at *7 (E.D. Pa. Feb. 9, 1993) ("Counsel is not ineffective for failing to present cumulative evidence." (citing *Brogdon v. Blackburn*, 790 F.2d 1164 (5th Cir. 1986))); *cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011) (finding no prejudice where "[t]he 'new' evidence largely duplicated the mitigation evidence at trial").

There was also ample strategic reason not to call these witnesses. Having received the affidavits at issue during discovery, Keller's counsel was aware of the nature of the witnesses' testimony and knew their relationship to Keller and this case. Farkas was Keller's fiancée at the time, and she and Caras were both implicated in the theft of Slavinsky's funds. Keller wrote six checks to Farkas from the trust account, and Caras wrote checks from the same account on

10

multiple occasions. *See* App. 160, 512-13, 633-34. Faced with these considerations, deciding not to call witnesses of questionable credibility was far from deficient; rather, it was a strategic decision made by competent counsel that should be left undisturbed.

There was also no actionable failure to impeach and cross-examine Slavinsky. Keller believes his counsel should have questioned Slavinsky more aggressively regarding Slavinsky's "emotional obsessions," "constant obstructions," "paranoia," and other "significant mental disabilities." Keller Mem. 34, ECF 138 at 53. The record reflects, however, that Keller's counsel did in fact elicit testimony during cross establishing these points. For instance, Slavinsky admitted she did not keep her money in a bank because she "didn't feel secure about banks." App. 246. Her insecurities were further developed through other defense witnesses who testified as to their perception of Slavisnky and her paranoia regarding the power and influence of her brother over her affairs. *See, e.g.*, App. 561-62, 583-84. Keller also testified to that effect. App. 664-665 (stating Slavinsky believed "everybody was in cahoots with her brother because he was a very influential person"). On cross, counsel pressed Slavinsky regarding the services performed by Keller, and even won several admissions suggesting Slavinsky would have authorized payment for the work Keller performed. *See, e.g.,* App. 244 ("The money wasn't the point."), 251 ("[I]f I got a bill stating what he did, I would have paid it.").[6] His performance was not deficient.

---

[6] Keller also contends counsel was ineffective for failing to impeach Slavinsky with respect to two statements she made during the recorded conversations. In the first, Slavinsky stated that Keller used her money in the wrong way and did not only use it for legal fees. In the second, Slavinksy told Keller she "never thought [she] could be a wheeler-dealer like [her] mother." Keller Mem. 39, ECF 138 at 58. This Court cannot conclude there is a reasonable probability the outcome of this case would have been different if counsel had impeached Slavinsky as to each of these statements. The first statement is not the "critical admission" Keller makes it out to be. The statement does not, as Keller suggests, clearly imply Slavinsky authorized using her escrowed funds for legal fees without submitting a bill or obtaining her approval. Since she
11

Subjecting Slavinsky to a brutal cross-examination, which Keller maintains was "mandatory," could also have easily backfired, harming the defense. The Government argued during the opening that "[t]his is a case about a lawyer who stole $225,000 from an emotionally fragile woman." App. 62. Bullying the victim on the stand may have alienated Keller from the jury and strengthened the jurors' sympathy for Slavinsky. This is precisely why "[w]itness examination methods fall within the realm of trial strategy, and necessitate a strong level of deference to the attorney's decisions." *Fithian v. Shannon*, No. 02-1861, 2002 WL 1636004, at *5 (E.D. Pa. July 23, 2002) (citing *Diggs v. Owens,* 833 F.2d 439, 444-45 (3d Cir.1987)). Keller has provided no reason to conclude the deference contemplated by *Strickland* is unwarranted in this case.

Keller also attempts to create a cognizable ineffective assistance of counsel claim by alleging one of the jurors engaged in misconduct and was improperly biased in favor of the victim. As support for this contention, Keller claims to have seen the juror holding Slavinsky's hand during his sentencing hearing. Even if true, his observation provides no basis for an ineffective assistance of counsel claim because there is nothing inherently wrong with such an interaction, which occurred well after the jury returned its verdict, and, in any event, Keller does not allege he ever told his attorney about it. Keller also makes the highly dubious claim that during deliberations he saw the same juror in an unspecified "hotel lobby" and overheard her venting her frustration to non-jurors that the deliberations were ongoing in light of the defendant's obvious guilt. Keller Mem. 28, ECF 138 at 47. After witnessing the incident, Keller claims he requested his attorney broach the issue with the court.

---

never received a bill for services rendered, her statement could easily be interpreted as a general acknowledgement that her funds were improperly diverted. The second is also inconclusive, and does nothing to negate Keller's guilt.

If all this did in fact occur, counsel would have had an obligation to report the juror's conduct during trial. The Court need not hold an evidentiary hearing to assess Keller's credibility regarding these facts, however, because his claim still fails for want of prejudice. As required for the purposes of this § 2255 motion, this Court will accept Keller's allegations as true and view those facts in the light most favorable to him. *See Government of the V.I. v. Weatherwax*, 20 F.3d 572, 573 (3d Cir. 1994). But what Keller does not allege is significant—and readily distinguishes this case from cases in which alleged juror misconduct requires an evidentiary hearing. In *Weatherwax*, for example, the defendant claimed his attorney failed to bring to the Court's attention the fact that, during deliberations, a juror brought into the jury room a newspaper article that mischaracterized the defendant's actual testimony during trial. *Id.* at 576-77.[7] The court found because the potential for prejudice existed on those alleged facts, an evidentiary hearing was required to further develop the claim. *Id.* at 580.

Here, Keller does not allege the juror in question was improperly swayed by any outside influence or exposed to extra-record information. Nor does he allege the juror engaged in any premature intra-jury deliberations or that the deliberations were somehow compromised. The only allegations are that a juror had made up her mind about Keller's guilt, and communicated that fact to non-jurors outside the presence of any other jurors. Unlike in *Weatherwax*, even

---

[7] It is also worth noting that the defendant in *Weatherwax* attached several affidavits to his habeas petition supporting his allegation that the juror in question did actually bring the article into the jury room. His petition included affidavits of several courtroom observers who witnessed the act. Keller, by contrast, simply asserts in a single sentence in his 48-page-memorandum, without providing any supporting detail, that he happened to be in the same hotel as a juror and happened to overhear her make an improper comment to non-jurors. Keller does not explicitly confirm his account in his attached affidavit, nor has he provided any confirmation by any third party. In fact, Keller did not even include this issue in the "summary of the issues" set forth in his memorandum as explicit grounds for ineffective assistance of counsel. Nevertheless, in an abundance of caution, the Court will evaluate the issue assuming it was intended as a discrete basis for relief.

assuming the truth of Keller's allegations, there is nothing in the record creating a reasonable inference that prejudice existed. *Id.* at 579 (noting "[t]he skewed and unfavorable recital of Weatherwax's testimony [in the newspaper article] is the sort of information that carries the potential for prejudice"). In sum, this Court finds the factual basis for Keller's juror misconduct claim is implausible, but even if it was not, the existing record conclusively fails to show the presence of prejudice. In these circumstances, a hearing is not required. *See United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).

Keller next contends counsel was deficient by failing to raise multiple hearsay objections to evidence admitted during trial. This evidence included (1) the admission of certain checks drawn on the trust account, (2) testimony from the special agent on the case regarding Keller's submission of certain blacked-out checks to the Pennsylvania Disciplinary Board, and (3) a summary chart illustrating the decreases in the balance of funds in Slavinsky's account over the relevant period. Because Keller has failed to establish that any of the purported hearsay would have been inadmissible, he cannot show deficient performance or prejudice resulting from his counsel's failure to object.

With respect to certain checks written on the trust account, Keller does not identify any specific exhibits that were improperly admitted and does not explain the nature of their purported hearsay status. Even if a check could be considered a "statement" under Rule 801, the checks were signed by Keller, and were therefore admissible as non-hearsay under Federal Rule of Evidence 801(d)(2). As for the testimony regarding certain blacked-out checks, even if the special agent's testimony was based on hearsay, Keller himself testified to making the decision to black out the information from the checks. App. 749-50. The Disciplinary Board's investigator also testified to receiving the checks. Thus, it was strategically proper not to object

14

to the agent's testimony, and any objection would not have altered the outcome of the case. Keller has also provided no basis to challenge the admissibility of the summary chart. Under Federal Rule of Evidence 1006, a summary chart is admissible to prove the contents of voluminous writings if the underlying documents themselves are admissible. The agent investigating the case laid the requisite foundation for the underlying documents during trial, and nothing in the record raises a question as to their admissibility. Many of the documents at issue were signed by Keller and were therefore admissible as party admissions, or qualified as business records under Rule 803(6). Keller's claims of ineffective assistance based on a broad hearsay objection have no merit.[8]

Keller also believes his counsel should have filed a motion to dismiss the indictment because a former employee, Jessica Albright, testified falsely before the grand jury. To obtain a dismissal of the indictment on this ground, Keller would have had to prove the Government knowingly presented false evidence. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988). As Keller's counsel undoubtedly knew, this difficult standard makes dismissal of an

---

[8] Keller also launches a conclusory challenge to the evidence used to establish the interstate use of wires, but provides no specifics for the Court to meaningfully analyze his claim. Certain documents proving a reconciliation process took place in New York were, according to Keller, inadmissible hearsay, but counsel failed to object to their admission. He also claims counsel was ineffective for failing to call an expert witness to testify regarding the interstate transmission element, but offers no description of the intended testimony or explanation of how a defense expert's opinion on these issues would have materially affected the outcome. His ineffective assistance claim regarding these topics is deficient on its face. *See Thomas,* 221 F.3d at 437 ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").

Keller also attempts to relitigate the sufficiency of the evidence as it relates to the interstate transmission element of the crime, claiming the Government failed to establish an adequate connection between the checks and the charges in the indictment and the interstate reconciliation process. The Third Circuit has already rejected this argument, finding that "[t]he Government presented undisputed evidence connecting the specific checks charged in the indictment to the [interstate] clearing process." *United States v. Keller*, 395 F. App'x 913, 915 (3d Cir. 2010). This Court need not revisit the issue again here.

indictment extremely rare. To prevail on his ineffective assistance claim, Keller must also show he was prejudiced by counsel's failure to move for dismissal, but cannot make this showing. The nature of Albright's allegedly false testimony involved her knowledge of the burglaries of Keller's law office. Keller was not charged with burglary, and thus, even if false, Albright's testimony would have little to no effect on his indictment and subsequent conviction for twelve counts of wire fraud. Moreover, Keller's conviction on these counts proves the absence of any possible prejudice with respect to the grand jury proceedings. *See United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993) ("But the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." (quoting *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986)).

Keller's final grounds for ineffective assistance involve complaints regarding counsel's performance during sentencing and on appeal. Keller first claims counsel failed to challenge at sentencing the loss amount calculated in the pre-sentence report. This is incorrect as a factual matter, since defense counsel did in fact object in writing as to this issue and argued in support of the objection at the sentencing hearing. Keller states these efforts were not enough, claiming counsel had an obligation to provide (unspecified) evidence in support of a reduced loss figure. The Court rejects this unsupported claim. Counsel ably argued in support of the objections, but the judge overruled the objection after reaching an independent conclusion based on the evidence admitted during trial.

Keller next argues counsel was ineffective for failing to call character witnesses during sentencing. Keller does not, however, point to one character witness who would have, but did

not, testify on his behalf. This conclusory assertion fails to demonstrate ineffective assistance. Keller lastly challenges the restitution payments, claiming his counsel had an obligation to request the district court to make specific factual findings concerning Keller's ability to pay $225,000 in restitution. Keller himself represented to the court that he would be able to pay restitution more quickly if he were not imprisoned. App. 1243. And Keller's ability to pay restitution is also set forth in the pre-sentence investigation report, the findings of which were adopted by the court during the sentencing hearing. App. 1222. Counsel did not err in this regard.

Finally, Keller challenges his counsel's failure to argue on appeal that the evidence at trial was insufficient to establish criminal intent. As the Third Circuit has recently reiterated, however, "[a]ttorneys 'need not, and should not, raise every . . . claim but rather may select among them in order to maximize the likelihood of success on appeal.'" *United States v. Turner*, 677 F.3d 570, 577 (3d Cir. 2012) (citing *Showers v. Beard*, 635 F.3d 625, 634 (3d Cir. 2011)). Keller's counsel raised this exact argument on a motion for judgment of acquittal, and the district court rejected it, finding "[t]he evidence upon which the jury could reasonably have concluded that defendant knowingly and wilfully participated in a scheme to defraud with specific intent to defraud is overwhelming." *United States v. Keller*, No. 07-51, 2008 WL 2120022, at *2 (E.D. Pa. May 19, 2008), *aff'd on other grounds*, 395 F. App'x 912 (3d Cir. 2010). That Keller's counsel made the tactical decision not to present a losing argument on appeal does not constitute ineffective assistance.

For the foregoing reasons, Keller's motion under 28 U.S.C. § 2255 will be denied without an evidentiary hearing. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.